Franklin L. GIBSON, Appellant,

v.

BOARD OF EDUCATION OF JACKSON COUNTY, Kentucky and Clay Harmon, Jr., in his official capacity of Superintendent of the Jackson County Schools, Appellees.

No. 90–CA–921–MR.

Court of Appeals of Kentucky.

March 22, 1991.

Arthur L. Brooks, Brooks, Coffman & Fitzpatrick, Lexington, for appellant.

F.C. Bryan, Bryan, Fogle and Chenoweth, Mount Sterling, John G. Prather, Jr., Somerset, for appellees.

Before LESTER, C.J. and HOWARD and McDONALD, JJ.

McDONALD, Judge.

The appellant, Franklin L. Gibson, taught special education at the Jackson County

High School during the 1987–88 school year under a limited contract. This was Gibson's first year as a teacher with any system. Sometime in March, 1988, Gibson was informed that his contract would not be renewed for the following school year. At that time Gibson was not too concerned about the notice as he was informed by other teachers and the superintendent that *all* teachers on limited contracts received such notices.

In July Gibson learned that the superintendent did not intend to renew his contract, at which time he asked the board for the reasons why his contract was not renewed. By certified mail the board attempted to provide its response. At the time the post office attempted delivery, Gibson was out of state on vacation. Upon his return he attempted to obtain his letter from the post office but was told it had been returned. Indeed the board acknowledges that the letter was returned and that it made no further attempt to supply Gibson with the requested information.

On September 27, 1988, Gibson filed his complaint in the Jackson Circuit Court alleging that the decision not to renew his contract was based on improper and discriminatory motives repugnant to certain sections of the Kentucky Constitution and that the board's failure to provide him with the reasons for nonrenewal violated certain statutory provisions entitling him to relief.[1]

The circuit court dismissed the complaint. It concluded that Gibson "was extremely negligent in picking up his mail" or "didn't want to accept this certified letter" from the school system. It further concluded that the board had a "legal right not to renew" Gibson's contract and it had done nothing wrong in failing to give him a contract for the 1988–89 school year. We disagree.

At issue is the proper application of KRS 161.750 entitled "Nonrenewal of limited contracts." At the time this controversy arose, the statute provided as follows:[2]

(1) Any teacher employed under a limited contract shall at the expiration of such limited contract be deemed reemployed under the provisions of KRS 161.-720 to 161.810 for the succeeding school year at the same salary plus any increment or decrease as provided by the salary schedule, unless the superintendent of schools has recommended to the board of education that the contract of the teacher not be renewed and unless the board has voted to approve said recommendation.

(2) If the board of education approves the superintendent's recommendation, as provided in subsection (1) of this section, *the board must present written notice to the teacher that the contract will not be renewed no later than April 30 of the school year during which the contract is in effect. Upon receipt of a request by the teacher, the board shall provide a written statement containing the specific, detailed and complete statement of grounds upon which the nonrenewal of contract is based.*

(3) *Upon failure of the employing board of education to* act favorably on the recommendation of the superintendent not to renew a contract as required by subsection (1) of this section, to give written notice of said nonrenewal as required by subsection (2) of this section or to *provide the written statement of grounds required by subsection (2) of this section the teacher shall receive a contract of employment for the next school year*; and, if the teacher has served the number of years as required by KRS 161.740(1)(b) or (c), said contract of employment shall be a continuing contract. Such teacher shall be presumed to have accepted such employment, unless he shall notify the board of education in

---

**1.** Gibson, not a Jackson County native, alleged the board had an unwritten policy to hire Jackson County natives whenever possible. He also alleged he was not rehired because he had expressed criticism of the operation of the special education program and the condition of the school facility. As far as we can tell, Gibson abandoned his constitutional claim and litigated only the board's failure to comply with KRS 161.750(2).

**2.** This statute was amended in 1990 and the remedy provisions of subsection (3) were deleted.

writing to the contrary on or before the fifteenth day of June, and a written contract for the succeeding year shall be executed accordingly. (Emphasis added.)

Non-tenured teachers have very few rights under our statutory scheme. A school board neither has to rehire a teacher on a limited contract nor provide him with a hearing if he is not rehired. KRS 161.750 gives the non-tenured teacher only the right to (1) notice of nonrenewal before April 30, and (2) a written statement "containing the specific, detailed and complete" grounds for nonrenewal, if requested. The legislative intent for requiring the statement of "specific, detailed and complete" reasons for nonrenewal was discussed in *Gaines v. Board of Education of Dayton, Independent School District,* Ky.App., 554 S.W.2d 394, 395 (1977), as follows:

> It would seem obvious that the underlying intent of KRS 161.750(2) is to insure teachers, who have not reached tenure stature, ample notice of not being re-employed so that they will have adequate time to obtain employment elsewhere for the coming school year, *and that the teacher has a right to know why he is not being re-employed,* so that the situation may be corrected if it is within the power of the teacher to do so. (Emphasis ours.)

*See also Phillips v. Board of Education of Muhlenberg County,* Ky.App., 580 S.W.2d 730 (1979).

Gibson complains that, through no fault of his own, he never received the written reasons from the board. The school board, on the other hand, contends that it fully complied with the statute. It argues that the statute doesn't require "actual receipt" of the written statement. For reasons beyond our understanding, the board refers us to the "mailbox rule," which is merely a presumption that a piece of mail has been received. *See Haven Point Enterprises, Inc. v. United Kentucky Bank, Inc.,* Ky., 690 S.W.2d 393 (1985). The board acknowl-edged that the certified letter was returned and even filed it as evidence, thus proving it was never received by Gibson. The trial court's ruling that Gibson was "negligent" (by taking a vacation?) or didn't want his mail (a conclusion for which there is no evidence), has no bearing on the legal issue of whether or not the *board* complied with its statutory duties.

There is no issue presented concerning timely notice of nonrenewal and, we believe, had the board provided a written statement of the actual reasons for refusing to rehire Gibson as contemplated by KRS 161.750(2), its duty to him would have been fulfilled by the mailing of same to Gibson's current address. What was actually mailed to Gibson was a copy of the board's minutes which contained reasons the superintendent admitted did not pertain to Gibson.[3] Apparently the practice in Jackson County at that time was to notify *every* teacher on a limited contract before April 30th that he or she would not be rehired. Many if not most of the teachers who received the notices eventually got rehired after budget, student population and the number of tenured teacher retirements became known to the board.

The superintendent admitted in his deposition, however, that at the time the board voted not to rehire Gibson that the actual reasons for not rehiring him were comprised of concerns about his professional conduct that were never discussed before the board nor made known to Gibson in the letter. The following testimony is pertinent:

Q 52 Do you recall having some conversation with Mr. Gibson after this March 10 letter was sent to him concerning whether he would or would not actually be rehired for '88–89?

A Well, I think he asked me a couple of times, yes, sir.

Q 53 What did you tell him?

A That at the time I didn't know.

---

**3.** These reasons included: "1. Budgetary Constraints.... 2. Inability of the Board at this time to determine the teachers that will retire. 3. The inability of the Board at this time to determine the nature and extent of the pro-grams which will be operated and offered the next year. 4. The inability of the Board at this time to determine revenue available. 5. Student Population."

Q 54 Did you ever tell him that he would be rehired?

A No, sir.

Q 55 Did you ever tell him that the sending of these notices was just a formality, that you sent that to all of the—

A Yes, sir, to all first-year teachers.

Q 56 Did you tell him it was just a formality?

A Yes, sir. Usually it is.

Q 57 So actually when you made that recommendation in March of 1988, are you saying that you had not made a decision one way or the other as to whether or not Mr. Gibson would be employed for '88–89?

A Basically I'd made a decision, yes, sir.

Q 58 You had not made a decision?

A I had made a decision.

Q 59 What was that decision?

A Not to rehire him.

Q 60 You had made that in March of 1988?

A Yes, sir.

Q 61 But you didn't tell Mr. Gibson that?

A No, sir, but I did tell him—encourage him to go get another job someplace else.

Q 62 When did you do that?

A Somewhere along in there. I don't know exactly when. But you know, I've always told all my employees that if they could get another job and—when these notices go out, you know, to go—do the best they can; that it's usually a formality, and that's right.

The superintendent further explained that he chose not to rehire Gibson because he left school early one day without checking with anyone in the office. He stated that he didn't put the real reason in the written statement mailed to Gibson "for Mr. Gibson's own protection, whether he thinks so or not." Another person (a Jack-son County native, coincidentally) was hired to replace Gibson.

This case is factually very similar to *Phillips v. Board of Education of Muhlenberg County, supra.* The board's reply to the teacher's request for a written statement of grounds in that case "was merely a recital of the statutory procedure required for nonrenewal." 580 S.W.2d at 731. This Court held:

> If we were to accept the Board's contention that it complied with the statute by merely restating its procedures, then the Board would hereafter never have to supply substantive reasons for not hiring a nontenured teacher. To allow this would clearly circumvent the statute.

Jackson County's procedure of notifying all non-tenured teachers that they will not be rehired, when in practice most are, is obviously another attempt to "circumvent" the statute.

Mr. Gibson was not given a "written statement of grounds" as contemplated by KRS 161.750(2). It was admitted that he was never furnished with the true grounds for the action taken against him. His failure to pick up the certified letter is of no import as the letter did not in the first instance comport with the mandate of the statute as proven by the board's own admissions through the superintendent. Gibson's remedy is plainly set out in KRS 161.750(3).

Accordingly, the case is reversed and remanded to the Jackson Circuit Court with directions to enter a judgment for the appellant consistent with this opinion.[4]

All concur.

---

4. A similar issue was presented in *Board of Education of McCreary County v. Williams,* Ky. App., 806 S.W.2d 649 (1991), by this panel.